### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAN BLEVINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 11-CV-2181 WEB/KMH |
| ) | |
| CAWLEY & BERGMANN, LLP. f/k/a, ) | |
| BRONSON CAWLEY & BERGMANN, LLP., ) | |
| and BRONSON & MIGLIACCIO, LLP., ) | |
| ) | |
| Defendant. ) | |

### COMPLAINT

NOW COMES the Plaintiff, DAN BLEVINS, by and through his attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for his complaint against the Defendant, CAWLEY & BERGMANN, LLP., f/k/a, BRONSON CAWLEY & BERGMANN, LLP., and BRONSON & MIGLIACCIO, LLP. Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. DAN BLEVINS, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Hutchinson, County of Reno, State of Kansas.

1

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to CitiFinancial.

6. The debt that Plaintiff allegedly owed CitiFinancial was for a loan, the funds of which were used for the personal use of Plaintiff and/or used for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. CAWLEY & BERGMANN, LLP., f/k/a, BRONSON CAWLEY & BERGMANN, LLP., and BRONSON & MIGLIACCIO, LLP., (hereinafter, "Defendant") is a law firm engaged in the collection of debt within the State of Kansas. Defendant is incorporated in the State of New York.

9. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## IV. ALLEGATIONS

14. In or around June 2010 through March 2011, and on multiple occasions therein, Defendant initiated multiple telephone calls to Plaintiff in an attempt to collect a debt allegedly owed by Plaintiff to CitiFinancial.

15. During the course of the aforementioned time period, and on multiple occasions therein, Plaintiff engaged in multiple telephone conversations with Defendant relative to the debt on which it was attempting to collect.

16. During the course of the aforementioned time period, and on multiple occasions therein, Defendant left multiple voicemails for Plaintiff at his residence.

17. During the course of the aforementioned time period, and on multiple occasions therein, Defendant left multiple voicemails for Plaintiff on his cellular telephone number.

18. During the course of the aforementioned time period, and on multiple occasions therein, Defendant left multiple voicemails for Plaintiff at his place of employment.

19. Despite having multiple contacts with Plaintiff and despite being fully cognizant of Plaintiff's location, on or about February 15, 2011, Defendant proceeded to contact Plaintiff's place of employment and leave a voicemail message in the general voicemail box at Plaintiff's place of employment.

20. On or about February 15, 2011, the outgoing voicemail message for the general voicemail box at Plaintiff's place of employment did not identify Plaintiff by name such that any caller could reasonably conclude that only Plaintiff would be listening to voicemail messages.

21. On or about February 15, 2011, the outgoing voicemail message for the general voicemail box at Plaintiff's place of employment stated "[y]ou have reached the general delivery voicemail box."

22. On or about February 15, 2011, Mrs. Dunn, a duly authorized representative of Defendant left a voicemail message in the general voicemail box at Plaintiff's place of employment stating that she was calling from "the attorneys' office of Cawley & Bergmann."

23. Defendant further stated on the aforesaid voicemail message that it was calling regarding Dan Blevins.

24. Defendant also stated that it was calling concerning a file relating to Plaintiff.

25. Defendant further stated that the file concerned Plaintiff's matter with CitiFinancial.

26. The aforesaid voicemail message was distributed to multiple third-parties at Plaintiff's place of employment who were on the general mailbox distribution list at Plaintiff's place of employment.

27. Multiple third-parties at Plaintiff's place of employment listened to the aforesaid voicemail message.

28. Plaintiff did not consent to Defendant contacting third parties.

29. During the course of the aforesaid voicemail message, Defendant failed to advise Plaintiff that it was a debt collector, that it was attempting to collect a debt and that any information obtained would be used for that purpose.

30. The aforementioned statements, in conjunction with Defendant's failure to apprise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Mrs. Dunn was an attorney.

31. From in or around July 2010 through in or around February 2011, Mrs. Dunn initiated a telephone call to Plaintiff and left Plaintiff a voicemail message.

32. During the aforesaid voicemail message Defendant stated that if it did not hear from Plaintiff it was going to "advise its attorneys to move forward against Plaintiff in the State of Kansas."

33. Defendant further stated that Plaintiff's prompt attention was needed and that Plaintiff or Plaintiff's attorney had to contact Defendant.

34. Defendant then told Plaintiff "we are not going to wait around for you. I am going to have to move forward if I do not hear from you."

35. Again, during the aforesaid voicemail message, Defendant failed to apprise Plaintiff that it was a debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

36. The aforementioned statements, in conjunction with Defendant's failure to apprise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Mrs. Dunn was an attorney.

37. At no time during the course of the aforementioned voicemail messages did Mrs. Dunn apprise Plaintiff that she was not an attorney.

38. Upon information and belief, Mrs. Dunn is not an attorney.

39. Defendant's statements, as delineated above, had the effect of conveying to an unsophisticated consumer that if Plaintiff did not contact Defendant to pay the debt he allegedly owed then Defendant would file a lawsuit against Plaintiff.

40. From in or around June 2010 through in or around February 2011, and on multiple occasions therein, Michelle Youngblood, a duly authorized representative of Defendant, engaged in multiple telephone calls with Plaintiff.

41. During the course of the aforementioned time period, and on multiple occasions therein, Ms. Youngblood left multiple voicemail messages for Plaintiff.

42. During multiple voicemail messages left for Plaintiff by Ms. Youngblood, Defendant stated that it had conducted an asset search and job verification search on Plaintiff.

43. Defendant's statements that it had conducted an asset search and job verification search on Plaintiff were false, deceptive and/or misleading given that, upon information and belief, at the time Defendant made the aforementioned statements it had not conducted said searches relating to Plaintiff.

44. During multiple voicemail messages left for Plaintiff by Ms. Youngblood, Defendant stated that if Plaintiff did not contact Defendant by the end of the day then Defendant would take immediate action against Plaintiff.

45. During multiple voicemail messages left for Plaintiff by Ms. Youngblood, Defendant stated that it had been asked to make a recommendation regarding Plaintiff's file and that unless Plaintiff contacted Defendant the file would be pulled from Defendant's office.

46. Defendant's statements, as delineated above, had the effect of conveying to an unsophisticated consumer that if Plaintiff did not contact Defendant to pay the debt he allegedly owed then Defendant would file a lawsuit against Plaintiff.

47. During multiple voicemail message left for Plaintiff by Ms. Youngblood, Defendant told Plaintiff that he should contact an attorney.

48. Defendant's statements, as delineated above, had the effect of conveying to an unsophisticated consumer that Plaintiff should contact an attorney as Defendant was going to file a lawsuit against Plaintiff.

49. During multiple voicemail message left for Plaintiff by Ms. Youngblood, Defendant provided Plaintiff with a putative case number.

50. During another voicemail message left for Plaintiff by Ms. Youngblood, Defendant stated "I think you are playing games. The matter has just been escalated. I am suggesting that you get in touch with the attorney who handles these matters for you."

51. During another voicemail message left for Plaintiff by Ms. Youngblood, Defendant stated "I have not heard from you which is not a good thing since it states that you do not care or choose to resolve this matter voluntarily."

52. Defendant's statement that Plaintiff did not want to resolve this matter voluntarily had the effect of conveying to an unsophisticated consumer that if Plaintiff did not contact Defendant then Defendant would file a lawsuit against Plaintiff.

53. At no time during the course of the multiple voicemail messages left for Plaintiff by Ms. Youngblood did she apprise Plaintiff that she was a debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

54. The aforementioned statements, in conjunction with Defendant's failure to apprise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Mrs. Dunn was an attorney.

55. At no time during the course of the multiple voicemail messages left for Plaintiff by Ms. Youngblood did she apprise Plaintiff that she was not an attorney.

56. Upon information and belief, Ms. Youngblood is not an attorney.

57. Defendant has not filed a lawsuit against Plaintiff for the debt he allegedly owes.

58. Upon information and belief, at the time of making the aforementioned threat, Defendant had no intention of filing a lawsuit against Plaintiff for the debt he allegedly owes.

59. Upon information and belief, Defendant has no authority to file a lawsuit against Plaintiff for the debt he allegedly owes.

60. Upon information and belief, at the time of making the aforementioned threat, Defendant had no authority to file a lawsuit against Plaintiff for the debt he allegedly owes.

61. The natural consequence of Defendant's statements was to unjustly condemn and vilify Plaintiff for his non-payment of the debt he allegedly owed.

62. The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

63. The natural consequence of Defendant's statements was to cause Plaintiff mental distress.

64. In its attempts to collect the debt allegedly owed by Plaintiff to CitiFinancial, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

   b. Communicated with the consumer at an unusual time and place or at a time or place which should be known to be inconvenient to the consumer in violation of 15 U.S.C. § 1692c(a)(1);

   c. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

   d. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

   e. Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

  f. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

  g. Falsely represented either directly and/or by implication that he was an attorney and/or that the communication was from an attorney in violation of 15 U.S.C. §1692e(3);

  h. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

  i. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

  j. Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

  k. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and.

  l. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

65. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V. JURY DEMAND

66. Plaintiff hereby demands a trial by jury on all issues so triable.

67. Plaintiff, DAN BLEVINS, by and this his attorneys Larry P. Smith & Associates, Ltd., hereby respectfully requests that the trial of this matter proceed in Kansas City.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, DAN BLEVINS, by and through his attorneys, respectfully prays for judgment as follows:

  a. All actual compensatory damages suffered;

  b. Statutory damages of $1,000.00;

   c. Plaintiff's attorneys' fees and costs;

   d. Any other relief deemed appropriate by this Honorable Court.

            Respectfully submitted,
            **DAN BLEVINS**

         By: s/ D. Matthew Durgin
           Attorney for Plaintiff

Dated: March 28, 2011

D. Matthew Durgin (Atty. No.: 21557)
LARRY P. SMITH & ASSOCIATES, LTD.
8508 W. 90th Terrace
Overland Park, KS 66212
Telephone: (913) 908-2313
      (312) 222-9028
Facsimile: (888) 418-1277
E-Mail: mdurgin@smithlaw.us